IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THE CLEANING AUTHORITY, LLC | * | |
| | * | |
| v. | * | Civil Action No. CCB-20-3360 |
| | * | |
| HUNSBERGER ENTERPRISES, INC., et al. | * | |

\*\*\*\*\*\*

## MEMORANDUM

Pending before the court is a motion by plaintiff The Cleaning Authority ("TCA") for default judgment pursuant to Fed. R. Civ. P. 55(b)(2) against defendant Hunsberger Enterprises, Inc. ("Hunsberger Enterprises") on Count I of the complaint and for summary judgment pursuant to Fed. R. Civ. P. 56 against defendant Stephen Hunsberger on Counts II–III.[1] (ECF 34, Mot. for Summ. J.). The motion has been fully briefed,[2] and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons stated below, the court will grant TCA's motion.

## BACKGROUND

This case arises from a contract dispute between The Cleaning Authority and its former franchisee, Hunsberger Enterprises, Inc. In early 2018, Stephen Hunsberger, as sole owner of Hunsberger Enterprises, entered into a franchise agreement to operate a residential and commercial cleaning business with The Cleaning Authority, effective February 4th, 2018, for a period of fifteen

---

[1] TCA seeks judgment only with respect to counts I-III of the complaint, expressing that it is willing to dismiss the remaining claims if default and summary judgment are granted. (ECF 34-1 at 2).

[2] The defendants appear to have failed to properly file their response with the court, however, a copy of Mr. Hunsberger's response on behalf of himself and the now-defunct Hunsberger Enterprises, Inc. (ECF 37-1, Opp'n) has been provided to the court by TCA with its reply brief (ECF 37, Reply).

1

years. (ECF 34-3, Ex. 1-A, Franchise Agreement, at 10). The agreement covered eleven zip codes in north central New Jersey. (*Id.* at 47). In return for the right to operate in this area using TCA marks, Mr. Hunsberger paid royalty fees between four and six percent and an advertising fee of one percent of the franchise's gross revenue. (*Id.* at 13, 15). Mr. Hunsberger agreed to be personally bound by every provision of the agreement via a personal guarantee. (*Id.* at 45-46). Similarly, he agreed to a confidentiality and noncompetition agreement that prohibited the misuse of TCA's marks and actions causing damage to the goodwill of TCA. (*Id.* at 53-57). The contract specified that breach of the franchise agreement's provisions would cause irreparable harm to TCA, and that TCA would be entitled to an injunction restraining such breach. (*Id.* at 36, 39). The agreement was subject to termination without an opportunity to cure if, on three or more occasions in a twelve-month period, Mr. Hunsberger's bank refused an electronic funds transfer request to pay TCA because of insufficient funds. (*Id.* at 27).

Mr. Hunsberger operated this franchise and, between 2018 and 2020, by Mr. Hunsberger's estimate, retained several employees and served over two hundred customers. (ECF 37-1). In 2019 and 2020, Mr. Hunsberger failed to make payments to TCA as required by the franchise agreement on at least three occasions, and was terminated as a franchisee on August 31, 2020, as a result.[3] (ECF 34-6, Ex 2, Hunsberger Admissions, ¶ 4; ECF 34-4, Ex. 1.B, Not. of Franchise Termination, at 1). The termination of the franchise agreement triggered two similar provisions: a post-term covenant not to compete and a clause of the aforementioned noncompetition agreement. (ECF 34-3 at 34, 55 ¶ 5.2).

---

[3] While Mr. Hunsberger claims that the relationship was terminated on September 1, 2020 (ECF 34-6 ¶¶ 7-8; ECF 37-1), TCA provides the termination letter listing the August 31, 2020, date (ECF 34-4 at 1), and explains that the charges Mr. Hunsberger was billed in September 2020 were weekly fees from when his franchise remained in operation. (*See* ECF 34-2 ¶ 8).

2

Despite this noncompete agreement, Mr. Hunsberger continued through at least October 2021 to advertise and provide routine and one-time residential and business cleaning services by highly trained personnel in north central New Jersey through the name "Affordable Services." (ECF 34-8, Ex. 3.A, Affordable Servs. Website). The website advertised Affordable Services to have sixteen employees, to be based at the same address as Mr. Hunsberger's TCA franchise, and to have been in operation for over a year. (*Id.*).

Wells Fargo Bank, N.A. provided copies of seventeen checks from eight customers deposited into Hunsberger Enterprise's account (ending in "1755") made out to "The Cleaning Authority" or "The Cleaning Service" from August to November 2020. (ECF 34-9, Ex. 4, Checks Cashed by Hunsberger Enterprises). Sixteen of these checks came from addresses within the territory of Mr. Hunsberger's business. (*Id.*). While Mr. Hunsberger asserts that some older clients paid late for services received prior to September 1, 2020, some checks describe services performed on four occasions in September and October 2020, after the termination of the franchise agreement. (*Id.* at 12-15).[4] Additionally, at least one previous customer of Mr. Hunsberger's TCA franchise, Ms. Lenore Neighborn, claims to have been contacted by Mr. Hunsberger for cleaning services in September 2021, long after his franchise's termination. (ECF 34-10, Neighborn Aff.).

TCA filed its complaint in this court on November 18, 2020. (ECF 1). On January 4, 2021, the Clerk of Court entered default against Hunsberger Enterprises, Inc., pursuant to Fed. R. Civ. P. 55(a) (ECF 14), which Mr. Hunsberger did not timely move to vacate. After engaging in discovery, TCA moved for summary and default judgment on January 13, 2022. (ECF 34). The combined motion is now ready for resolution.

---

[4] Not all the checks listed are relevant to the post-termination period: one check is dated August 31st, 2020, the final day of permissible operation of Mr. Hunsberger's franchise. (*Id.* at 15).

3

## DISCUSSION

### I. Default Judgment

#### a. Legal Standard

Federal Rule of Civil Procedure 55(b)(2) provides that where a plaintiff seeks default judgment and the plaintiff's claim is not for a sum certain, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). "A court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default as a matter of right." *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D.Va. 2009); *see also EMI April Music Inc. v. Rodriguez*, 691 F. Supp. 2d 632, 634 (M.D.N.C. 2010) (similar). In exercising its discretion, courts may consider several factors, including:

> [T]he amount of money potentially involved; whether material issues of fact or issues of substantial public importance are at issue; whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; ... whether the grounds for default are clearly established or are in doubt ....[;] how harsh an effect a default judgment might have; or whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect on the part of the defendant.

*White*, 618 F. Supp. 2d at 506 (quoting 10A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 2685 (4th ed. 2020)). Once default judgment has been granted, the court may determine the extent of damages either by relying on documentary evidence in the record or convening an evidentiary hearing. *Gaither v. Davi Transportation Servs., LLC*, No. 18-cv-1447-ELH, 2020 WL 2614783, at *3 (D. Md. May 22, 2020).[5]

#### b. Breach of Franchise Agreement Contract

---

[5] Unpublished cases are cited not for any precedential value but for the persuasiveness of their reasoning.

4

TCA seeks damages for default judgment on the first count of its complaint, for breach of the franchise agreement contract by Hunsberger Enterprises, Inc. TCA alleges that the business misused TCA trademarks and confidential information, operated a competing business, and failed to pay amounts due in violation of the express terms of the franchise agreement. Each of these allegations went uncontested by Hunsberger Enterprises, Inc., and an order of default was entered by the court on January 4, 2021. (ECF 14).

Because no material facts are in dispute and adequate evidentiary support has been provided by affidavits and relevant documents the court does not need to conduct an evidentiary hearing to determine the extent of damages resulting from the breach. The damages alleged by TCA are categorized as (1) unpaid fees and royalties and (2) liquidated damages.

### i. Unpaid Fees

At the time of the termination of the franchise agreement, the amount of unpaid royalties and past-due fees from the occasions upon which Mr. Hunsberger's bank refused TCA's attempted electronic funds transfers was $7,997.55. (ECF 34-2, Ex. 1, DiBlassio Cert. ¶¶ 7-8; ECF 34-5, Ex. 1.C, Itemization of Unpaid Fees).[6]

### ii. Liquidated Damages

The franchise agreement between TCA and the defendants contained a liquidated damages provision. (ECF 34-3 at 30). The provision stipulates that if the agreement were terminated prior to the conclusion of its term, Hunsberger Enterprises would pay TCA an amount equal to two years

---

[6] TCA's termination notice, dated July 2, 2020, lists the total past due fees owed by the defendants as $9,502.20. (ECF 34-4, Ex. 1.B, Not. of Franchise Termination, at 1). Because TCA does not request or itemize this larger figure in their motion for default judgment, the $7,997.55 figure controls.

5

of royalty fees, "calculated as the average monthly royalty fees paid in the twelve-month period preceding the termination of [the] Agreement, multiplied by twenty-four." (*Id.*).

"It has long been the rule in Maryland that valid liquidated damages provisions are enforceable." *Barrie Sch. v. Patch*, 401 Md. 497, 508 (Md. 2007). This liquidated damages clause contained in the franchise agreement is enforceable, as it meets the three essential elements of a valid and enforceable clause under Maryland law. *See Bd. of Educ. of Talbot Cty. v. Heister*, 392 Md. 140, 156 (2006) (holding that a liquidated damages provision must (1) "provide in clear and unambiguous terms for a certain sum;" (2) provide for reasonable compensation for the "damages anticipated by the breach;" and (3) be a mandatory, binding agreement that cannot be altered after the fact in light of actual damages) (internal quotations and citations omitted). The terms of the franchise agreement are definite and allow for straightforward calculation, are not excessive or out of proportion to damages that might reasonably have been expected to result from a breach, *see Choice Hotels Int'l, Inc. v. Chewl's Hosp., Inc.*, 91 F. App'x 810, 813, 817 (4th Cir. 2003) (upholding a liquidated damages clause totaling three years' royalties) (internal quotations and citations omitted), and by their terms cannot be altered to reflect actual damages (*see* ECF 34-3 at 24).

Between September 2019 and September 2020, the year preceding the contract's early termination, Mr. Hunsberger made fifty payments of weekly royalties, averaging $225.93. Extended over a fifty-two week year, in order not to reward two weeks of missed or non-payment,

and divided by twelve, this yields a monthly average of $979.03. Multiplied over a twenty-four month period, this yields total liquidated damages of $23,496.72.[7, 8]

In sum, the damages owed TCA for the defendants' breach of contract are $7,997.55 and $23,496.24, totaling $31,493.79.

## II. Summary Judgment

### a. Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v.*

---

[7] This figure, as calculated by the court, differs by under a dollar from the total given in Mr. DiBlassio's certification ($23,496.72 and $23,496.24, respectively). (*See* ECF 34-2 ¶ 9). The court will use Mr. DiBlassio's lower figure.

[8] As discussed above with respect to unpaid fees, the termination notice lists liquidated damages of $40,640.08 (ECF 34-4, Ex. 1.B, at 2-3). Because TCA does not request or itemize this larger figure in their motion for default judgment and clarifies damages in an amended order (ECF 39), the $23,496.24 figure controls.

7

*Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). The relevant inquiry is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (quoting *Anderson*, 477 U.S. at 255).

### b. Breach of Contract: Personal Guarantee and Confidentiality & Noncompetition Agreement

TCA moves for summary judgment on two breach of contract claims based on two exhibits to the franchise agreement between themselves and Mr. Hunsberger: Mr. Hunsberger's personal guarantee and assumption of the franchisee's obligations (ECF 34-3 at 45-46) and the confidentiality and noncompetition agreement (*id.* at 53-57).

First, Mr. Hunsberger's personal guarantee is documented and undisputed. It subjects Mr. Hunsberger to personal liability for breach of contract. (*Id.* at 45-46) (creating joint and several liability for Mr. Hunsberger and Hunsberger Enterprises for their obligations under franchise agreement and in the event of a breach of the contract). The breach of the contract agreement, found above, creates the joint and several liability for which the plaintiff seeks summary judgment on Count II of the complaint.

Second, there is no genuine dispute that Mr. Hunsberger violated the confidentiality and noncompetition agreement after his franchise's termination on August 31, 2020, by misusing TCA's marks, operating a competing business, and potentially damaging TCA's goodwill. In the confidentiality and noncompetition agreement, Mr. Hunsberger agreed (1) not to use TCA's names or marks except as authorized by TCA in writing (*id.* at 54 ¶ 3) and (2) for twenty-four months after Mr. Hunsberger ceased to be a franchisee, not to engage in a competing cleaning business

8

within his former franchise territory or within 20 miles of this territory in any direction (*id.* at 55 ¶ 5.2).

TCA provides evidence that Mr. Hunsberger's "Affordable Services" website continued to promote residential and business cleaning services in north central New Jersey through at least October 2021, the date the website screenshot was captured. (ECF 34-8, Ex. 3.A). The checks provided by Mr. Hunsberger's bank, some with memo lines indicating payment for cleaning services rendered in September and October 2020 and some made out to "The Cleaning Authority," are additional proof of continuing operation in contravention of the franchise agreement's noncompete clause. Finally, TCA provides the affidavit and text message exchange of Ms. Neighborn, who claims she was contacted by Mr. Hunsberger in September 2021 regarding a time to clean her home. Together, these evince the use of TCA's name and operation of a competitive cleaning business within Mr. Hunsberger's former franchised territory.

Mr. Hunsberger's unsubstantiated denials that he did not continue to provide cleaning services after the date of termination or identify himself with or as TCA do not constitute a genuine dispute of material fact in light of the evidence of such action provided by TCA. Mr. Hunsberger admits ownership of the Cleaning Service website in question (ECF 37-1 at 2), the authenticity of the checks cashed in his Wells Fargo account (*id.*), and that he called Ms. Neighborn about "continued cleaning" (*id.*). Mr. Hunsberger's claim that he did not receive calls from and has now shut down his website does not address that it remained online advertising cleaning services for over a year after his franchise's termination. Similarly, his assertion, unsupported by affidavits or other proof, that some elderly clients paid for services late does not create a dispute of material fact with respect to the checks for September and October 2020 cleaning dates. Nor does his

insistence that he corrected Ms. Neighborn by disavowing that he represented TCA put into dispute the fact that he solicited a former client against the terms of the noncompete agreement.

### i. Covenant and Injunction

To determine whether to enforce the agreement's noncompete provisions, the court must also decide whether the covenant contained in the franchise agreement is reasonable and valid.[9] The agreement's post-term covenant applies for twenty-four months and is limited to the cleaning operations within twenty miles of its own formerly licensed territory or within ten miles of another TCA franchisee's territory. (ECF 34-3 at 34 ¶ 21.3, 55 ¶ 5.2). Both the time and geographic restrictions in the covenant are reasonable, and similar restrictions regularly have been enforced. *See Padco Advisors, Inc. v. Omdahl,* 179 F. Supp. 2d 600, 606–07 (D. Md. 2002) (enforcing two-year covenant with no geographical limitation); *Occupational Health Centers of the Sw., P.A. v. Toney,* No. ELH-17-0975, 2017 WL 1546430, at *12 (D. Md. Apr. 28, 2017) (granting injunction where covenant ran for two years within a twenty-mile radius of the plaintiff's locations); *see also Maternal-Fetal Med. Assocs. of Md., LLC v. Stanley-Christian,* No. 0967 Sept. 2009, 2013 WL 3941970 at *17 (Md. Ct. Spec. App. July 24, 2013) (noting "the geographical scope of the Non–Competition Provision, twenty miles, is quite limited"). In the confidentiality and noncompetition agreement, Mr. Hunsberger agreed any "remedy at law to be inadequate" and to be subject to an immediate injunction restraining him from further breach, with or without proof of actual damages. (ECF 34-3 at 55 ¶ 8). The twenty-four month term of the covenant will thus be enforced beginning as of November 1, 2021, the approximate beginning of Mr. Hunsberger's compliance with the covenant.

---

[9] The damages calculations provided in reference to the default judgment also apply to the defendants' summary judgment motion.

10

## CONCLUSION

For the reasons stated above, the defendant's motion for default judgment with respect to count I and summary judgment with respect to counts II and III will be granted, and the remaining counts IV-VI will be dismissed. A separate Order follows.

6/29/22
Date

/s/ CCB

Catherine C. Blake
United States District Judge